[Cite as *State v. Smith*, 2021-Ohio-1391.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                                              |
|--------------------------|---|----------------------------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-200106                          |
|                          |   | TRIAL NO. 19CRB-23941                        |
|    Plaintiff-Appellee, | : |                            |
|                          | : | *O P I N I O N.*                             |
|   vs.          |   |                                              |
|                          | : |                                              |
| SIERRA SMITH,            | : |                                              |
|    Defendant-Appellant. | : |                           |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 21, 2021

*Andrew S. Garth*, Interim City Solicitor, *William T. Horsley*, City Prosecutor, and *Jennifer Bishop*, Assistant Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} Prompted by jealousy, a relational turf war resulted in a telecommunications harassment conviction after defendant-appellant Sierra Smith launched a threatening Facebook message to her boyfriend's ex. On appeal, Ms. Smith attacks the trial court's credibility determinations, arguing that her conviction runs afoul of the weight of the evidence. After reviewing the record, we conclude that the trial court did not lose its way in evaluating the evidence, and we affirm Ms. Smith's conviction.

{¶2} The events underlying this case occurred while Ms. Smith's boyfriend, Brandon Domineack, enjoyed the company of his son for weekend visitation. The boy's mother (Mr. Domineack's ex-girlfriend) called Mr. Domineack's phone to talk with her son. But importantly, for purposes of this appeal, the mother used Facebook's messaging app to call Mr. Domineack's Facebook account. This type of internet call is free, provided that both parties have the app installed on their phones and are connected to Wi-Fi. Nonetheless, Ms. Smith balked at the mother calling Mr. Domineack's phone, so she interrupted the mother's conversation with her son to accuse her of having ulterior motives for calling—presumptively a reunification with Mr. Domineack. A verbal altercation ensued that ended with Ms. Smith instructing the mother to stop calling his phone and threatening physical violence should she continue doing so. And to reinforce the point, Ms. Smith proceeded to taunt that the mother did not know where Mr. Domineack lived, or the whereabouts of her son (under Ms. Smith's watchful eye).

{¶3} Within minutes of ending the call, a volley of messages flew back and forth between the mother and Mr. Domineack's Facebook account. And this

exchange ended with Ms. Smith allegedly sending the threatening message that forms the basis of her conviction: "ima kill yo son first since u want my man so bad[.] im always around [your son,] its easy access, ain't no reason for u to call him no more * * * ." The mother then frantically called Mr. Domineack's Facebook account in an attempt to talk with her son, but to no avail. After calling 20 times or so, Ms. Smith eventually answered, but she refused to let the mother speak with her son.

{¶4} The mother turned over screen shots of the threatening message to police, and Ms. Smith was charged with telecommunications harassment under R.C. 2917.21(B)(1). This statute provides: "No person shall make or cause to be made a telecommunication * * * from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." R.C. 2917.21(B)(1). The case proceeded to a bench trial, and Ms. Smith based her defense on the fact that the threatening message was sent from Mr. Domineack's Facebook account. In other words, she maintained that no direct evidence existed that she actually sent the message. Nonetheless, the mother identified the voice that interrupted her conversation with her son, and later answered her call, as belonging to Ms. Smith. Additionally, Mr. Domineack testified that Ms. Smith had access to his phone on that date and insisted that he had not sent the messages. Tying this testimony together, along with the context of the messages, the trial court determined that Ms. Smith sent the threatening message and found her guilty of telecommunications harassment. Ms. Smith now appeals.

{¶5} In Ms. Smith's sole assignment of error, she insists that the trial court's judgment stood against the weight of the evidence. In reviewing whether her harassment conviction runs counter to the manifest weight of the evidence, we sit as

a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, the entire record. *Id.* But we will only reverse if the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶6} Ms. Smith offers four reasons why she believes the trial court lost its way. She argues: (1) that the mother's voice identification of Ms. Smith was dubious because they had only interacted, in person, once before; (2) that anyone with access to Mr. Domineack's Facebook account could have sent the threatening message; (3) that the mother is untruthful; and (4) that Mr. Domineack testified that the mother deleted some of the messages she sent, thus preventing the court from seeing the threatening message in context.

{¶7} None of these points convinces us that a manifest injustice occurred. First, we note the absence of any evidence contradicting the mother's voice identification (Ms. Smith did not testify). And Ms. Smith provides no authority for the proposition that a voice identification cannot be based on a single interaction. Second, while it's true that anyone with access to Mr. Domineack's Facebook account could have theoretically sent the threatening message, no evidence was adduced in the record to call the authorship into question. And the overlapping time frame of the voice conversations between Ms. Smith and the mother (through Mr. Domineack's Facebook account) and the threatening message produces compelling evidence that Ms. Smith sent the message. Third, even assuming that the mother presents some credibility issues or deleted some of her messages, we see no dispute

4

that the threatening message at issue was sent to the mother from Mr. Domineack's Facebook account. Thus, we conclude that the trial court had ample reason to find that Ms. Smith sent the threatening message in view of the totality of the evidence, and we cannot say that the court lost its way in making this determination. We therefore overrule Ms. Smith's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion